**NOT FOR PUBLICATION**                                    **CLOSED**


## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                        :
MARTA L. MEDERO,                        :
                                        :
            Plaintiff,                  :          Civil Action No. 04-4937 (JAP)
                                        :
      v.                                :          **OPINION**
                                        :
COMMISSIONER OF SOCIAL                  :
SECURITY,                               :
                                        :
            Defendant.                  :
_____:

Appearances:

AGNES S. WLADYKA
Abromson & Carey, Esquires
60 Park Place Suite 601
Newark, New Jersey  07102
        Attorney for Plaintiff

CHRISTOPHER J. CHRISTIE
United States Attorney
KAREN G. FISZER
Special Assistant U.S. Attorney
c/o Social Security Administration
Office of General Counsel
26 Federal Plaza, Room 3904
New York, NY 10278-0004
        Attorney for Defendant

PISANO, District Judge:

Before the Court is Marta L. Medero's ("Plaintiff") appeal from the Commissioner of the Social Security Administration's ("Commissioner") final decision denying her request for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (2006).[1]   The Court has jurisdiction to review this matter under 42 U.S.C. § 405(g) and decides this matter without oral argument.   *See* Fed. R. Civ. P. 78.   The record provides substantial evidence supporting the Commissioner's decision that Plaintiff was able to engage in substantial gainful activity and therefore was not disabled.   Accordingly, the Court affirms.

## I.  Background

Plaintiff was born on January 11, 1947.   She has at least an eighth grade education that she obtained in her native country of Honduras.   Plaintiff came to the United States in 1965.   She completed twenty-eight credits at the Fashion Institute of Technology in New York but did not receive a degree.   She has over twenty years of experience working as a sample tailor for designers.   Plaintiff asserts that she has been disabled since January 15, 2001.

---

[1] The decision of Administrative Law Judge Richard L. De Steno discusses Plaintiff's request for DIB.   Although Plaintiff states in her memorandum of law that she requested both DIB and supplemental security income payments ("SSI"), it is not clear from the record whether she in fact requested SSI.   Nonetheless, the standard for determining when a claimant is seeking DIB under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, is identical to the standard for determining when a claimant is seeking SSI under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.   See* 42 U.S.C. §§ 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); 42 U.S.C. § 1383(c)(3) ("The Final determination of the Commissioner of Social Security . . .  shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.").

2

### A.  Procedural History

On March 4, 2002, Plaintiff filed an application for DIB, alleging an inability to work effective August 1, 2000 due to back pain.  The Social Security Administration (the "SSA") denied Plaintiff's claim initially and upon reconsideration, as did Administrative Law Judge Richard L. De Steno (the "ALJ") in a hearing decision issued on November 26, 2002.  Plaintiff filed an appeal with the Social Security Appeals Council (the "Appeals Council"), which reviewed the matter and issued a remand order dated June 17, 2003 instructing the ALJ to (1) clarify Plaintiff's alleged onset date; (2) obtain additional evidence concerning Plaintiff's alleged musculoskeletal impairments; (3) further evaluate Plaintiff's subjective complaints; (4) further consider Plaintiff's maximum residual functional capacity; and (5) explain the weight given to opinion evidence.

Plaintiff also filed a subsequent application for DIB on January 2, 2003, alleging a disability onset date of November 26, 2002, the date of the earlier adverse hearing decision. Both claims were consolidated for joint adjudication in a post-remand hearing held before the ALJ on October 28, 2003.  Plaintiff appeared and testified at the hearing with the assistance of a Spanish-language interpreter, as did Mr. Rocco J. Meola, an impartial vocational rehabilitation counselor.  At the hearing, Plaintiff amended her alleged onset date to January 15, 2001 in order to accommodate the Appeals Council's concern regarding severance pay she received in 2000 and income she received in 2001.

The ALJ evaluated Plaintiff's claim *de novo* and issued a decision on November 15, 2003 denying both of Plaintiff's applications.  On November 23, 2003, Plaintiff timely filed a Request for Review with the SSA.  On September 9, 2004, the Appeals Council denied Plaintiff's request,

3

and the ALJ's ruling became the Commissioner's final decision.  Plaintiff filed this action

challenging the final decision on October 8, 2004.

### B.  Factual History

### 1.  Plaintiff's Employment Prior to January 15, 2001

On November 7, 2002 Plaintiff testified in a hearing held before the ALJ that after she

arrived in the United States, she worked for approximately eight years at Suzette Company and

twelve years at Ken Miller Fashions as a piece worker.  Plaintiff most recently worked in New

York as a sample tailor at Lou Levy Fashion for thirteen years until August 1, 2001, her initially

reported disability onset date.  Plaintiff's job required her to press and then assemble pieces of

garments given to her by the fabric cutters.  She made jackets, coats, and other women's

garments.  Plaintiff testified that she sat for four hours and then stood for four hours to press the

garments and fit them to mannequins.  However, on her disability report, Plaintiff stated that she

sat for seven hours.  At times, Plaintiff's job required her to lift up to ten pounds.  Plaintiff's job

also required her to use her feet to operate the foot pedals of the sewing machine and her hands to

guide the material through the machine.  Occasionally, the job required Plaintiff to sew by hand.

Plaintiff testified that she had to bend her neck to see what she was doing.

### 2.  Plaintiff's Daily Activities

Plaintiff lives with her thirty-two year old daughter.  She cooks dinner occasionally and

prepares light meals every other day, but testified that she cannot lift a gallon of milk.  She

testified to being unable to do household chores.  She acknowledged, however, that she is able to

go shopping for household items, food, and clothing, by herself.  Plaintiff enjoys going to the

beach with her daughter or friends.  Plaintiff estimated that she can drive for up to twenty-five

minutes at a time, sit up for twenty-five minutes at a time, and with her pills walk for thirty minutes at a time.  Her native language is Spanish.  She cannot write English, but testified that she can speak, read, and understand English.

### 3.  Plaintiff's Medical History

The record indicates that Plaintiff has a history of treatment for various ailments prior to her alleged disability onset date of January 15, 2001.  First, Plaintiff was diagnosed with chronic liver diseased in March 1998, after laboratory tests revealed that she exhibited signs of a past or present Hepatitis C virus infection as well as other abnormal liver functions.  Further, between 1999 and 2001, staff physicians at Union Health Center treated Plaintiff for neck pain, chronic lower back pain that radiated down her left leg and foot, and pain in her right wrist.[2]  Plaintiff's treatment records further reveal continued complaints of pain and numbness in her left leg and lower back.  Plaintiff's treatment for these ailments included physical therapy, chiropractic care, acupuncture, and a number of prescription and over-the-counter anti-inflammatory pain medications.  On June 14, 2001, Plaintiff was involved in a motor vehicle accident.  Following

---

[2] Plaintiff's physical examinations by staff physicians at Union Health Center chronicle her disease range of motion of the neck and lower spine, as well as her diagnoses relating to osteoporosis of the lower spine.  On August 2, 1999, Plaintiff underwent a Computed Tomography ("CT scan") of the lower spine that revealed mild disc bulging at the L3-4 and L4-5 levels but showed no evidence of herniation.  A treatment note dated September 27, 1999 indicated that Plaintiff felt about 75% better and subsequently returned to work.  When evaluated on November 1, 2000, Plaintiff complained of pain in her lower back joints.  X-rays of these joints performed on November 2, 2000 were normal.  Plaintiff complained of right-wrist pain on November 30, 2000, and X-rays performed on that date revealed minimal arthritis.  Plaintiff underwent nerve conduction studies on January 9, 2001, however these tests showed no evidence of motor root or peripheral nerve involvement in either the left leg or foot, or the muscles parallel to the spine at the left L3-S1 vertebral levels.

the accident, Plaintiff sought treatment from several doctors for a variety of ailments.

### a.  Dr. Vesna Gizdovcic

On June 19, 2001, Dr. Vesna Gizdavcic, M.D., conducted a Magnetic Resonance Imaging Test (an "MRI") of Plaintiff's lower back that was normal.  An MRI of her neck revealed mild ridging and/or disc bulging at the C5-6 and C6-7 levels with slight asymmetry at the C6-7 level. Dr. Gizdavcic noted that Plaintiff exhibited no focal disc herniation or significant narrowing of the foraminal region, in which the spinal nerve leaves the spinal canal to go down the arm.

### b.  Dr. Valery Rimerman

On June 29, 2001, Plaintiff began treatment with Valery Rimerman, M.D., for complaints of constant head and back pain, fatigue, dizziness, and difficulty sleeping due to back pain and discomfort.  On physical examination, Plaintiff complained of and exhibited palpable discomfort in her sacroiliac joint, which is located next to the spine and connects the triangular bone at the bottom of the spine with the pelvis.  Dr. Rimerman noted spasm and limited mobility in Plaintiff's paraspinal muscles, which run parallel to the spine.  Dr. Rimerman performed straight leg raising tests that caused Plaintiff to experience pain below her knee.  Dr. Rimerman also conducted individual muscle testing on Plaintiff that revealed relative motor deficit in her legs and feet.  Dr. Rimerman opined that Plaintiff exhibited manifestations of post-concussion syndrome as well as lower back sprain and muscle swelling.  Dr. Rimerman prescribed Plaintiff a program of physical therapy that included exercises, hot and cold therapies, massage, ultrasound, and electrical stimulation therapy.

Dr. Rimerman next evaluated Plaintiff in August 2001.  Again, Plaintiff complained of pain and stiffness in her lower spine, which radiated down her legs.  Dr. Rimerman prescribed

Plaintiff the anti-inflammatory medications Daypro and Celebrex.  On August 15, 2001, Dr.
Rimerman performed an Electromyogram ("EMG") and nerve conduction studies on Plaintiff
that indicated lumbosacral radiculopathy, which is irritation of the nerve roots in the right lower
back, at the L5-S1 region.  Dr. Rimerman's further treatment notes reflect Plaintiff's complaints
of pain in the lower back area, but also note Plaintiff's partial improvement as of November 30,
2001.  In a report dated March 26, 2002, Dr. Rimerman diagnosed Plaintiff with lower back
sprain/strain, lumbar radiculopathy, left knee contusion, and bulging discs in her upper spine at
the C4-5 and C6-7 regions.

A report from Dr. Rimerman dated April 13, 2002, states that Plaintiff complained of
insomnia, fatigue, and pain in the left knee that increased with walking.  Plaintiff complained of
debilitating low back pain radiating to both legs.  Upon examination, Dr. Rimerman found
Plaintiff alert and in only moderate distress due to pain.  He found evidence of tenderness over
the L1-S2 region of her lower back.  Once again, Dr. Rimerman performed straight leg raising
tests that caused Plaintiff to experience pain below her knee.  He noted tenderness in Plaintiff's
left knee.  An MRI of the lower spine was normal.  An EMG of Plaintiff's legs indicated right
lumbosacral radiculopathy at the L5-S1 region.  The doctor opined that Plaintiff exhibited left-
knee contusion, as well as muscle strain and sprain, and injured ligaments in her lower back.  He
noted that Plaintiff reached maximal improvement as of April 13, 2002, and she was discharged
from physical therapy that day.

### c.  Dr. Steven L. Nehmer

On October 22, 2001, Steven L. Nehmer, M.D., evaluated Plaintiff for complaints of pain
and sensitivity in and around her back and pain that radiated down to her feet.  On physical

examination, Dr. Nehmer noted that Plaintiff had limited motion of her back and tenderness.  Dr. Nehmer performed straight leg raising tests on Plaintiff, which indicated that she did not have pain radiating below her knee upon leg raising.  Dr. Nehmer diagnosed Plaintiff with lumbar radiculopathy and recommended lumbar epidural injections.  Plaintiff declined the injections. Dr. Nehmer examined Plaintiff for the second and last time on December 17, 2001, and noted that her condition remained essentially unchanged.  During this visit, Plaintiff again declined lumbar epidural injections.

### d.  Dr. Betty Vekhnis

On June 5, 2002, Dr. Betty Vekhnis performed an orthopedic consultative evaluation on Plaintiff.  Plaintiff complained of constant lower back pain, aggravated by prolonged standing, which radiated down the left leg to her foot and arthritic pain in her shoulder and hands.  On physical examination, Plaintiff's gait was normal.  Dr. Vekhnis examined Plaintiff's cervical spine and reported no vertebral tenderness or paraspinal muscle spasm.  Plaintiff complained of some tenderness on rotation.  However, examination of the lumbar spine showed no vertebral tenderness and muscle bending did not elicit any complaints of lower back or nerve pain.  Dr. Vekhnis noted right-sided paraspinal tenderness.  Plaintiff had full passive range of motion of both shoulder joints.  Dr. Vekhnis noted tenderness of the right wrist upon bending and tenderness of the PIP joints, which are located in the middle of the finger, upon touching them on both sides simultaneously.  Plaintiff exhibited less than full muscle and grip strength at 4+/5 and pinch at 4/5.  Dr. Vekhnis' examination of Plaintiff's lower extremities showed full range of motion in all tested joints with no arthritic deformities.  Dr. Vekhnis opined that there was insufficient evidence to support a diagnosis of ongoing lumbar radiculopathy.

### e.  Dr. Zafer Termanini

Dr. Zafer Termanini, M.D., evaluated Plaintiff on May 21, 2002.  Plaintiff told Dr. Termanini of her ten-year history of back pain.  Plaintiff reported numbness and tingling in her back and complained of difficulty with prolonged standing or sitting.  On initial examination, Plaintiff reported marked tenderness and severe spasm.  Dr. Termanini advised Plaintiff to continue taking Celebrex and recommended that she receive local trigger injections.

Plaintiff returned to Dr. Termanini on June 27, 2002, complaining of pain and tenderness in her lower back.  During this visit, Dr. Termanini gave Plaintiff a trigger point injection of Depomedral in the sacroiliac joint of her lower back.  Dr. Termanani reviewed an MRI of Plaintiff's lumbar spine taken by Dr. Rimerman on June 19, 2001 and opined that it looked normal.  Dr. Termanini noted that an MRI of Plaintiff's neck revealed degenerative disc disease at C5-7 region without disc herniation.  Dr. Termanini also reviewed the EMG and a nerve conduction study performed by Dr. Rimerman on August 15, 2001, which revealed right lumbosacral radiculopathy.  Dr. Termanini diagnosed Plaintiff with a degenerative disease of the cervical spine, degenerative inflammatory disease of the lumbar and sacroiliac joints, and chronic fibromyalgia, which is a syndrome characterized by pain in the muscles and soft-tissue of the body.

On November 6, 2002, Plaintiff visited Dr. Termanini again.  The doctor gave Plaintiff another trigger point injection of Depomedral in the sacroiliac joint of her lower back.  During this examination, Dr. Termanini opined that Plaintiff was totally disabled.

### f.  Dr. Enrique Hernandez

Dr. Enrique Hernandez, a Neurologist, evaluated Plaintiff in December, 2002.  He noted

that although Plaintiff exhibited a stiff and slow gait, she had full motor strength and exhibited

no reflex, sensory, or coordination/balance deficiencies.  All of Plaintiff's cranial nerves were

fully intact.  Dr. Hernandez's follow-up notes indicated that Plaintiff received vitamin B-12

injections and took prescription medications such as Tramadol, Prozac and Maxalt.  Dr.

Hernandez's notes also indicated that Plaintiff was previously prescribed Prozac but stopped

taking it as of September 4, 2003.  The doctor diagnosed Plaintiff with possible fibromyalgia.

### g.  Dr. Mie Lin

In February 2003,  Dr. Mie Lin conducted a consultative physical examination of

Plaintiff.  Her only reported medication was Tylenol, which Plaintiff used on an as-needed basis.

Dr. Lin noted that Plaintiff was able to cook, manage her own money, socialize with friends, and

shower using a shower chair and bar.  Plaintiff appeared to be in no acute distress and exhibited a

normal gait and stance.  She walked on her heels and toes without difficulty and could squat

fully.  She needed no help dressing, undressing, or in mounting and dismounting the examination

table or rising from a seated position.  Plaintiff exhibited an unimpaired range of neck motion

and an ability to bend her lower back up to 70 degrees with full rotary functioning on both sides.

Plaintiff experienced pain below her left knee upon straight-leg raising at 30 degrees but

experienced no pain from raising her right leg.

Dr. Lin noted that Plaintiff had full range of motion in her shoulders, elbows, forearms,

wrists, hips, knees and ankles.  All of her joints were stable and non-tender, with no redness,

heat, swelling or effusion.  Her deep tendon reflexes were normal and exhibited no sensory

deficits.  Plaintiff had full dexterity in her hands and fingers.  Dr. Lin assessed that Plaintiff

exhibited a moderate impairment in bending and lifting/carrying heavy objects as well as in

standing and walking long distances due to back pain.  The doctor concluded that Plaintiff was capable of performing light activities.

## II.  Standard of Review

A reviewing court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence."  42 U.S.C. §§ 405(g); *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).  "Substantial evidence" means more than "a mere scintilla."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*  The inquiry is not whether the reviewing court would have made the same determination, but rather whether the Commissioner's conclusion was reasonable.  *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).  Thus, substantial evidence may be slightly less than a preponderance.  *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988).

Some types of evidence will not be "substantial."  For example,

'[a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g. that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion.'

*Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).

The reviewing court must review the evidence in its totality.  *See Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984).  In order to do so, "a court must 'take into account whatever in the record fairly detracts from its weight.' "  *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J.

11

1997) (quoting *Willibanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988) (internal citation omitted)).   The Commissioner has a corresponding duty to facilitate the court's review:  "[w]here the [Commissioner] is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence."  *Ogden v. Bowen*, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing *Brewster v. Heckler*, 786 F.2d 581 (3d Cir. 1986)).   As the Third Circuit has held, access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (quoting *Arnold v. Sec'y of Health, Educ. & Welfare*, 567 F.2d 258, 259 (4th Cir. 1977)).   Nevertheless, the district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams*, 970 F.2d at 1182.

### A. The Record Must Provide Objective Medical Evidence

Under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, a claimant is required to provide objective medical evidence in order to prove her disability.  42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless she furnishes such medical and other evidence of the existence thereof as the Secretary may require.").  Accordingly, a Plaintiff cannot prove that she is disabled based solely on her subjective complaints of pain and other symptoms.  She must provide medical findings that show that she has a medically determinable impairment.  *See id.; see also* 42 U.S.C. § 423(d)(1)(A) (defining a disabled person

as one who is "unable to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment . . .").

Furthermore, a claimant's symptoms, "such as pain, fatigue, shortness of breath,

weakness, or nervousness, will not be found to affect . . . [one's] ability to do basic work

activities unless "medical signs" or laboratory findings show that a medically determinable

impairment(s) is present."  20 C.F.R. § 404.1529(b); *see Hartranft v. Apfel*, 181 F.3d 358, 362

(3d Cir. 1999) (rejecting claimant's argument that the ALJ failed to consider his subjective

symptoms where the ALJ made findings that complaints of pain and symptoms were inconsistent

with objective medical evidence and claimant's hearing testimony); *Williams*, 970 F.2d at 1186

(denying claimant benefits where claimant failed to proffer medical findings or signs that he was

unable to work); *Green v. Schweiker*, 749 F.2d 1066, 1069-70 (3d Cir. 1984) (emphasizing that

"subjective complaints of pain, without more, do not in themselves *constitute* disability").

### B.  The Five-Step Analysis for Determining Disability

Plaintiff's eligibility for DIB is governed by 42 U.S.C. § 423.  A claimant is eligible for

DIB if she meets the disability period requirements of 42 U.S.C. § 416(i), and demonstrates that

she is disabled based on an "inability to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than

twelve months."  42 U.S.C. § 423(d)(1)(A).  A person is disabled for these purposes if her

physical or mental impairments are "of such severity that she is not only unable to do her

previous work, but cannot, considering her age, education, and work experience, engage in any

other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. §

423(d)(2)(A).

Social Security regulations set forth a five-step, sequential evaluation procedure to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. For the first two steps, the claimant must establish (1) that she has not engaged in "substantial gainful activity" since the onset of her alleged disability, and (2) that she suffers from a "severe impairment" or "combination of impairments." 20 C.F.R. § 404.1520(a)-(c). Given that a claimant bears the burden of establishing these first two requirements, the failure to meet this burden automatically results in a denial of benefits. *See Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987).

If the claimant satisfies her initial burdens, the third step requires that she provide evidence that her impairment is equal to or exceeds one of those impairments listed in Appendix 1 of the regulations ("Listing of Impairments"). *See* 20 C.F.R. § 404.1520(d). Upon such a showing, she is presumed to be disabled and is automatically entitled to disability benefits. *Id.* If she cannot so demonstrate, the benefit eligibility analysis proceeds to steps four and five.

The fourth step of the analysis focuses on whether the claimant's "residual functional capacity" sufficiently permits her to resume her previous employment. *See* 20 C.F.R. § 404.1520(e). "Residual functional capacity" is defined as "that which an individual is still able to do despite limitations caused by his or her impairments." 20 C.F.R. § 404.1520(e). If the claimant is found to be capable of returning to her previous line of work, then she is not "disabled" and not entitled to disability benefits. *Id.* Should the claimant be unable to return to her previous work, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to demonstrate that the claimant can perform other substantial gainful work. *See* 20 C.F.R. § 404.1520(f). If the Commissioner cannot satisfy this burden, the claimant shall

14

receive social security benefits.  *Yuckert*, 482 U.S. at 146-47 n.5.

### III.  The ALJ's Decision

        After reviewing the available evidence and considering Plaintiff's testimony, the ALJ concluded that Plaintiff was not disabled.  The ALJ made the following findings:

        The ALJ determined that Plaintiff met step one of the analysis because she had not engaged in substantial gainful activity since the amended alleged onset date of disability, January 15, 2001.  The ALJ determined that Plaintiff met step two of the analysis because her impairments qualified as "severe" under the Social Security regulations.  *See* 20 C.F.R. § 404.1520(b).  However, the ALJ concluded that Plaintiff did not meet the requirements of step three because her alleged impairments did not meet or medically equal any of the impairments in the Listing of Impairments.  Plaintiff does not dispute the ALJ's findings at steps one, two, and three.

        The ALJ proceeded to step four of the analysis, which focuses on whether the claimant's residual functional capacity sufficiently permits her to resume her previous employment.  *See* 20 C.F.R. § 404.1520(e).  If the claimant is found to be capable of returning to her previous line of work, then she is not "disabled" and not entitled to disability benefits.  *Id*.  A comparison between the claimant's residual functional capacity and the requirements of her past relevant work is necessary to satisfy step four.  *See* 20 C.F.R. § 404.1520(e)-(f); *Burnett v. Commissioner of Social Security Administration*, 220 F. 3d 112, 120 (3d Cir. 2000).  The ALJ determined that Plaintiff met step four of the analysis because her residual functional capacity permitted her to perform her past relevant work.

        The ALJ determined that Plaintiff's allegations regarding her limitations were not totally

credible.  The ALJ noted that he carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments while making this decision.  *See* 20 CFR § 404.1527.  The ALJ reasoned that Plaintiff has had, at all material times, the residual functional capacity for a full range of light work.[3]  *See* 20 CFR § 404.1567(b).  He added that Plaintiff's past relevant work as a garment sample maker did not require the performance of work-related activities precluded by her residual functional capacity.  *See* 20 CFR § 404.1565.  The ALJ articulated that Plaintiff's medically determinable bulging cervical discs and lumbar radiculitis did not prevent her from performing her past relevant work.  The ALJ concluded that Plaintiff was not under a "disability" as defined in the Act and regulations, at any time through the date of this decision.  *See* 20 CFR § 404.1520(e).  Based on his finding at step four, the ALJ did not reach step five of the analysis.

Plaintiff now raises three arguments challenging the ALJ's decision at step four:

1.  The Commissioner improperly evaluated the medical evidence;
2.  The Commissioner erred in not fully considering Plaintiff's non-exertional impairments when making his decision; and
3.  The Commissioner erred as a matter of law in finding that Plaintiff can perform the full range of light work.

The Commissioner contends that the ALJ's decision is supported by substantial evidence and therefore should be affirmed.

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. § 404.1567(b).

## IV.  Legal Discussion

The Court must evaluate whether the ALJ's decision that Plaintiff's residual functional

capacity permits her to resume her previous employment is supported by substantial evidence.

In the case at hand, after reviewing the evidence the ALJ found:

At all times material herein, the claimant has been capable of performing a full
range of light work (20 CFR §404.1567(b)).  She has therefore been able to sit,
stand and/or walk for a total of 6 hours during the course of an 8-hour workday;
she has been able to lift/carry objects weighing up to 20 pounds occasionally, and
10 pounds frequently; and she has been capable of pushing/pulling arm and leg
controls.  No significant nonexertional (including postural) restrictions are
established by the objective medical evidence.

This assessment is consistent with the examination results of Drs. Vekhnis
and Lin, which include normal gait/station without the use of any assistive device,
full squatting ability, and independence in dressing/undressing and
mounting/dismounting the examination table.  There was no evidence of any
muscle atrophy, nor were sensory or reflex deficits appreciated.  Ranges of motion
were full in all body joints, except for a nominal decrease in forward lumbar
flexion.

. . . .

In deriving the claimant's residual functional capacity, no significant
weight is accorded to the declarations of disability of Drs. Termanini and
Hernandez.  They are not supported by their own findings or the record as a while,
and involve a subject reserved to the Commissioner.  No significant weight is
accorded to the assessment of moderate limitations in various activities made by
consultative examiner Dr. Lin.  It is based on the claimant's discredited subjective
complaints and not on objective medical evidence.  It is also inconsistent with his
other conclusion that she could perform light activities.  I also reject the state
agency's assessment of postural limitations and environmental limitations on the
basis that they are not objectively supported by the evidence of record.

. . . .

Based on the claimant's residual functional capacity, I must determine
whether the claimant can perform any of her past relevant work. The phrase "past
relevant work" is defined in the Regulations at 20 CFR § 404.1565. The work
usually must have been performed within the last 15 years or 15 years prior to the

date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and meet the definition of substantial gainful activity.

At the post-remand hearing, Mr. Meola testified that he is a vocational rehabilitation counselor.  The claimant performed a sample-maker job, a combination of sewing machine operator and one who puts patterns together.  It is light in exertion and at least semi-skilled.  An individual with a residual functional capacity for carrying objects weighing up to 20 pounds; frequently lifting and carrying objects weighing up to 10 pounds; standing, walking, and sitting up to six hours in an eight-hour day; pushing and pulling arm and leg controls; and the full range of light work, could perform that job. . . .

. . . .

The testimony of Mr. Meola to the extent that an individual capable of performing light work was capable of engaging in the claimant's past relevant work is found to be consistent with data contained within the <u>Dictionary of Occupational Titles and Selected Characteristics of Occupations</u>, and the claimant's own description of her former job.

The ALJ further noted that Plaintiff has never been hospitalized for her medical condition and that her treatment has been conservative in nature.  Based on the objective medical evidence, Plaintiff's testimony of daily living, and the testimony of a vocational expert, the ALJ determined that Plaintiff failed to establish that her impairments precluded her from engaging in her former job.

### A.  The ALJ's Evaluation of the Medical Evidence

Plaintiff argues that the ALJ failed to properly evaluate the medical evidence by failing to (1) give proper credence to her subjective complaints concerning a variety of ailments; (2) consider the testimony of Plaintiff's doctors; and (3) provide a function by function analysis to determine Plaintiff's residual functional capacity.

First, the ALJ's decision not to afford significant weight to Plaintiff's subjective

complaints, which included (1) pain; (2) numbness; (3) weakness; (4) muscle spasm; (5)

limitation of motion and function; (6) insomnia; (7) anxiety and depression; (8) Hepatitis C; and

(9) side effects of medications, was reasonable because these complaints were not supported by

objective medical evidence.  As discussed in section II.A. above, 20 C.F.R. § 404.1529 requires

that the objective medical evidence demonstrate a basis for the subjective complaints.   The ALJ

drew the reasonable conclusion that Plaintiff's alleged pain, numbness, weakness, muscle spasm,

and limitation of motion and function were less debilitating than she described because they were

contradicted by the objective medical evidence, Plaintiff's testimony of daily living, and the

testimony of the vocational expert, Mr. Meola.

Second, the ALJ considered the testimony of Plaintiff's doctors in rendering his decision

that Plaintiff was not entitled to disability insurance benefits.  The ALJ expressly stated that he

"carefully considered all of the medical opinions in the record regarding the severity of the

claimant's impairments" and discussed at length Plaintiff's history of treatment with Drs.

Gizdavcic,[4] Vekhnis, Lin, Termanini, Hernandez, Rimerman, and Nehmer.  Further, the ALJ

outlined the various tests that these physicians performed and the conclusions that these doctors

reached about Plaintiff's condition.

In discussing the relevant testimony of Plaintiff's numerous doctors, the ALJ explicitly

noted that his conclusion was consistent with the examination results of Drs. Vekhnis and Lin,

which indicated that Plaintiff had full range of motion in nearly all body joints and exhibited no

---

[4]  Although the ALJ does not mention Dr. Gizdavcic by name, the record indicates that
Dr. Gizdavcic is the physician who performed the MRI on Plaintiff after her motor vehicle
accident on June 14, 2001. The ALJ discusses Dr. Gizdavcic's treatment of Plaintiff on page
three of his opinion.

appreciable sensory or reflex deficits, muscle atrophy, or difficulty in dressing/undressing and

mounting/dismounting the examination table.  The ALJ articulated that he did not afford

significant weight to the declarations of disability by Drs. Termanini and Hernandez because they

were not "supported by their own findings or the record as a whole."  Similarly, the ALJ did not

afford significant weight to Dr. Lin's assessment of moderate impairments in various activities

because it was based on Plaintiff's subjective complaints, not supported by objective medical

evidence, and inconsistent with Dr. Lin's conclusion that Plaintiff could perform light activities.[5]

Although the ALJ failed to place any particular weight on the findings of Dr. Gizdavcic,

Dr. Rimerman and Dr. Nehmer, *see* 20 C.F.R. § 404.1527(d)(2), this omission was harmless

error and accordingly, does not warrant remand.  *See Jones v. Barnhart*, No. 02-0791, 2003 WL

941722, at *12 (S.D.N.Y. March 7, 2003) (finding that ALJ's failure to weigh physicians'

opinions was harmless error because "he engaged in a detailed discussion of their findings . . .

and his decision does not conflict with them"); *Walzer v. Chater*, No. 93-6240, 1995 WL

791963, at *9 (S.D.N.Y. Sept. 26, 1995) (finding that the ALJ's failure to discuss a physician's

report was harmless error because the report "would not have changed the outcome of the ALJ's

decision."); *see also Baerga v. Richardson*, 500 F.2d 309, 313 (3d Cir. 1974) (concluding that

although the ALJ's findings "could be improved upon, careful consideration of the record and

relating it to the examiner's findings . . . are sufficient to satisfy the substantial evidence test.").

---

[5]  Accordingly, considering the objective medical evidence in support of the ALJ's decision, as well as Plaintiff's testimony of daily living, and the testimony of the vocational expert, Plaintiff's comparison of the instant matter to *Smith v. Califano*, 637 F.2d 968 (3d Cir. 1981) is unfounded.  In *Smith*, the court reversed the Secretary's determination of non-disability because "all of the evidence of disabling pain [was] favorable to the claimant."  *Id.* at 972. That is not the case here, as there is substantial medical and other evidence to support the ALJ's decision that the claimant is not entitled to disability insurance benefits.

A review of the medical findings of these physicians as set forth in the ALJ's opinion reveals that their opinions were either unfavorable to Plaintiff, neutral as to her condition, or representative of the findings of her other physicians.  First, Dr. Gizdavcic, who only examined Plaintiff on June 14, 2001, found that an MRI of her lumbosacral spine was normal and an MRI of her cervical spine revealed only mind disc bulging.  Second, Dr. Nehner, who evaluated Plaintiff on October 22, 2001 and December 17, 2001, diagnosed Plaintiff with lumbar radiculopathy; however, Plaintiff declined to pursue treatment for this condition.  Finally, although Dr. Rimerman noted that Plaintiff complained primarily of back and knee pain, he found that Plaintiff was oriented; that she was only in "moderate distress due to pain;" and that as of April 13, 2002, she attained "maximal improvement" and was discharged for physical therapy. Notably, none of these physicians opined that Plaintiff was unable to perform tasks required of her past employment.  Thus, the ALJ's failure to place any particular weight on these physicians' opinions would not have changed his decision.

Lastly, despite Plaintiff's claims to the contrary, it is apparent from the ALJ's opinion, *see supra* section IV., that he provided a function by function analysis of Plaintiff's residual functional capacity and reasonably concluded that Plaintiff could perform her past relevant work.

### B.  Plaintiff's Non-Exertional Complaints

Plaintiff contends that the Commissioner erred in not fully considering her non-exertional impairments listed above in section IV.A. as items (1) through (9).  In support, Plaintiff relies on *Burnett v. Commissioner of Social Security Administration*, in which the Third Circuit vacated the ALJ's decision and remanded the case for further discussion of the evidence because it was "troubled by the ALJ's conclusory dismissal of plaintiff's mental impairments because "[s]uch a

21

bare conclusion is beyond meaningful judicial review." 220 F.3d 112, 119 (3d Cir. 2000). However, *Burnett* does not require the ALJ to "reconcile and analyze every shred of evidence; rather, he is required to set forth his essential considerations with sufficient specificity. . . to enable the reviewing court to decide whether those conclusions are supported by substantial evidence. *Burnett*, 220 F.3d at 120.

The ALJ's decision is sufficiently specific to permit a meaningful judicial review of his findings. The ALJ's analysis required consideration of Plaintiff's exertional and non-exertional limitations of the alleged impairments listed as items (1) through (5) because the doctors who evaluated Plaintiff analyzed Plaintiff's exertional and non-exertional limitations in diagnosing the severity of her impairments. For this reason, the Court's discussion shall be limited to Plaintiff's alleged non-exertional impairments listed as items (6) through (9), namely insomnia, anxiety and depression, Hepatitis C, and side effects of medications.

First, with respect to Plaintiff's alleged anxiety and depression, the ALJ explicitly noted in his opinion that "no mental impairment was ever even alleged by the claimant in either of her claims." Despite the fact that Plaintiff failed to identify her alleged anxiety and depression as a basis for her disability, the ALJ did examine the record, noting that Plaintiff was briefly prescribed Prozac, but determined that there was no objective evidence in the record of any significant mental impairment. In support of his conclusion, the ALJ noted that Dr. Rimerman found that Plaintiff was emotionally stable.

Furthermore, the ALJ discussed Plaintiff's treatment history and concluded that there were "no significant medication side effects reflected within evidence." The ALJ noted that Plaintiff has taken medications including Clinoril, Flexeril, Cipro, Relafen, Daypro, Celebrex,

Tramadol, Maxalt, and Tylenol.  The ALJ explained that "[p]ain relief is obtained by over-the-counter medications, anti-inflammatories, and analgesics, and there are no significant side effects reflected within evidence."

Lastly, while the ALJ did not directly address Plaintiff's alleged insomnia or Hepatitis C, these omissions do not warrant remand.  *See Olsen v. Schweiker*, 703 F.2d 751, 754-55 (3d Cir. 1983 (finding that ALJ's decision was supported by substantial evidence where, even though ALJ did not specifically discuss claimant's alleged mental retardation, ALJ noted that he "considered all of the testimony given at the hearing and the documents contained in the exhibit file").  The ALJ explicitly noted that he "carefully considered all of the medical opinions in the record" and that he "review[ed] all of the evidence in the record."  With respect to her alleged Hepatitis C, Plaintiff neither mentioned this condition in her disability report nor did any of her treating physicians or consultative examiners indicate any impairments from Hepatitis C. Further, with respect to Plaintiff's alleged insomnia, the ALJ noted that Plaintiff complained to Dr. Rimerman of problems sleeping due to the pain from her physical injuries and stated that he did not credit Plaintiff's subjective complaints because they were not supported by the objective medical evidence.  Accordingly, ALJ's decision is upheld.

### C.  Plaintiff's Ability to Perform the Full Rage of Light Work

Plaintiff contends that the ALJ erred in determining that Plaintiff retains the residual functional capacity to perform the full range of light exertion level work, including her previous work; however, substantial evidence supports the ALJ's conclusion.

First, as discussed above, objective medical evidence supports the ALJ's determination that Plaintiff is able to return to work as a sample maker.  Drs. Lin and Vekhnis both noted that

Plaintiff could fully bend and extend her neck and that she had full rotary movement and range of motion in her shoulders, elbows, forearms, wrists, hips, knees, and ankles.  Both doctors noted that Plaintiff's joints were stable and non-tender, and that she had no motor deficiencies.  The ALJ noted that Plaintiff's treatment has been conservative in nature and that she was never hospitalized for her medical condition.

Further, Mr. Rocco Meola, the impartial vocational expert in this matter, testified that a person with Plaintiff's abilities could perform the full range of light work required of a sample maker.  The ALJ noted this conclusion to be consistent with data contained within the *Dictionary of Occupational Titles and Selected Characteristics of Occupations*, and with Plaintiff's own descriptions of her former job.

Plaintiff's testimony of daily living also suggests that her impairments are less debilitating than she claims.  Plaintiff testified she could sit for 25 minutes, stand for about 25 minutes, and with her pills walk for thirty minutes.  She testified that she cooks dinner occasionally and prepares light meals every other day.  Plaintiff is able to go shopping for household items, food, and clothing by herself.  She testified that she enjoys going to the beach with her daughter or friends.

The only evidence that supports Plaintiff's claims that she could not perform a full range of light work came from her own complaints and the subsequent declarations of disability by physicians that either lack objective medical support or are based upon Plaintiff's discredited complaints.  The ALJ recognized all of these discrepancies as detrimental to Plaintiff's credibility.

Accordingly, the ALJ's conclusion that Plaintiff's residual functional capacity permitted

her to perform her past relevant work is reasonable considering the objective medical evidence, testimony of Mr. Meola, and Plaintiff's daily activities.

## IV.  Conclusion

For the foregoing reasons, the Court concludes that substantial evidence supports the ALJ's factual findings and thus affirms the Commissioner's final decision denying Plaintiff disability benefits.  An appropriate order accompanies this opinion.


s/ Joel A. Pisano
JOEL A. PISANO U.S.D.J.


Orig:   Clerk
cc:      All parties
          File